35 N.J. Super. 177 (1955)
113 A.2d 696
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANNA ZARAFU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided April 28, 1955.
*178 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Samuel J. Davidson argued the cause for appellant (Mr. Edward J. Liguori, attorney; Mr. Dominick R. Rinaldi, of counsel).
Mr. William J. Arnold, Assistant Prosecutor, argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney; Mr. Jack Ballan and Mr. William C. Brudnick, on the brief).
*179 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a conviction for contempt in facie curiae in the Municipal Court of the Borough of Fairview, Bergen County.
On December 17, 1954 defendant appeared in the Municipal Court of Fairview both as a defendant charged with disorderly conduct under N.J.S. 2A:170-29, and as a complaining witness against a police officer for assault and battery. Defendant claims this latter charge was actually atrocious assault and battery.
The record on appeal is fragmentary and disjointed. It does not indicate whether Mrs. Zarafu was ever sworn. Her counsel requested an adjournment of the hearing on the disorderly person charge because his client was emotionally upset and not well enough to take the stand in her own behalf. The request was denied and counsel thereupon withdrew from the case.
The attorney for the police officer then asked that the case against his client proceed. Mrs. Zarafu stated she was not ready to proceed because she was sick. She insisted upon having counsel. There was a motion for a directed verdict on her complaint against the officer, whereupon defendant said to moving counsel, "Oh, nuts, you do not." The court warned her that she would be held in contempt. After granting the motion it proceeded to consider the police officer's complaint against defendant under the Disorderly Persons Act. He read the charge. Defendant claimed she was sick, and that she could not hear or talk. The court entered a plea of not guilty.
The record then becomes very confusing. After the police officer had begun to testify the court suggested that he first be sworn. Defendant, apparently believing that the remark was addressed to her, refused, stating she could not raise her right hand and did not know what she was saying. When the court sought to interrogate her she refused to answer, again claiming she could not talk. She demanded counsel and asked for a postponement. She continually interrupted the court's interrogation so that the magistrate again had to warn *180 her she would be held in contempt. He offered her a recess of 15 to 20 minutes to discuss the matter further with her attorney. She repeatedly declared she was being deprived of her rights and refused to answer anything. The court then found her guilty on the complaint, as charged. Defendant went into a tirade over the decision, interrupting the court despite warnings. The court tried to reason with her in the face of constant interruptions. It finally held her in contempt.
Sentence on both the disorderly person charge and the contempt was postponed for two weeks, to December 28, 1954. On that date the court fined defendant $100 as a disorderly person, suspending the fine on condition that she at no time go to the tavern where the brawl took place. Defendant's attorney  the same one who had withdrawn at the time of the hearing  then asked that defendant be given an opportunity to be heard on the contempt charge before the court passed judgment. The magistrate refused, stating that this was not necessary where the contempt had taken place in the presence of the court. A fine of $25 was imposed. This appeal ensued.
Our cases uniformly hold that any act or conduct which obstructs or tends to obstruct the course of justice, constitutes a contempt. In re Caruba, 139 N.J. Eq. 404 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947), certiorari denied 335 U.S. 846, 69 S.Ct. 69, 93 L.Ed. 396 (1948).
N.J.S. 2A:10-1 provides the statutory authority in the instant case:
"The power of any court of this state to punish for contempt shall not be construed to extend to any case except the:
(a) Misbehavior of any person in the actual presence of the court;

* * * * * * * *
(c) Disobedience or resistance * * * by any party * * * or any person whatsoever to any lawful * * * command of the court."
Although formerly some of the inferior criminal courts did not have the power to punish for contempt, Rhinehart *181 v. Lance, 43 N.J.L. 311 (Sup. Ct. 1881), that power is no longer open to question. N.J.S. 2A:10-7 gives municipal courts full authority to punish for contempt in any case provided by N.J.S. 2A:10-1. This power to punish summarily for contempt in facie curiae was reviewed and sustained in Board of Health of Weehawken Township v. New York Central R. Co., 10 N.J. 284 (1952).
R.R. 8:8-1 deals with summary disposition of a criminal contempt in the municipal court. It provides:
"A criminal contempt may be punished summarily if the magistrate certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. The order of contempt shall recite the facts and shall be signed by the magistrate and entered of record after the defendant is given an opportunity to be heard."
The language of the rule is clear: a person charged with contempt in facie curiae must be given an opportunity to be heard before the order of contempt is signed and entered of record. Mrs. Zarafu was given no such opportunity. She was pronounced guilty of contempt after her conduct and outbursts in court had reached the point at which the municipal magistrate felt that she was making it impossible for the court to proceed with the matter before it.
It may be conceded that defendant's conduct, whether by design or not, tended to obstruct the course of the trial and was contemptuous of the court, and that such a finding was completely justified on the basis of what she said and did. But this is not the question involved here. The question is whether she was afforded an opportunity to present a defense, or at least to explain, before judgment of contempt was passed upon her. The rule, R.R. 8:8-1, does not lend itself to construction. It is perfectly plain on its face and makes it mandatory to give a person charged with contempt in facie curiae an opportunity to be heard.
The express provisions of the rule, and the conclusion we reach, in no wise impair the traditional and necessary power of a judge to protect the dignity and authority of his *182 court. As was said in Board of Health of Weehawken Township v. New York Central R. Co., 10 N.J., at page 290, to deny our municipal courts  the courts closest to the people and exercising a significant part of the judicial power  the right of self-preservation upon which rests the implied power of courts generally to punish for contempt in facie curiae, "would largely nullify their status and ability to function properly as an essential part of our judicial structure." Depending upon the circumstances involved, there is no reason why the municipal magistrate cannot immediately hold a hearing on a contempt committed in his presence, and conduct and decide it summarily. Indeed, the exercise of such power in cases such as the present one would appear almost necessary in order that the authority of the court to function in an orderly fashion be maintained. No notice to the offender is necessary, he being present, before proceeding to hear and punish him, if found guilty. Swanson v. Swanson, 8 N.J. 169, 184 (1951); cf. R.R. 8:8-2(a).
Defendant makes the point that the contempt proceeding should have been separated from the disorderly person charge then being tried, and made a separate cause; failure to do so was a fatal infirmity  citing Wieczerzak v. Wieczerzak, 115 N.J. Eq. 89 (Ch. 1934). There is no real merit to the argument.
True, a criminal contempt proceeding has been considered separate from the cause in which the contempt was committed. The parties may be different, although that is not the case here. A criminal contempt is a public wrong; it is a misdemeanor, Staley v. South Jersey Realty Co., 83 N.J. Eq. 300 (Sup. Ct. 1914), and may be prosecuted like other crimes, In re Kerrigan, 33 N.J.L. 344 (Sup. Ct. 1869). It was formerly held that when prosecuted in a summary manner in a court against which the contumacious conduct was directed, the contempt was a matter that had to be entitled as a separate cause. Dorrian v. Davis, 105 N.J. Eq. 147 (Ch. 1929). However, the original cause and the contempt are generally intertwined. Contemptuous acts are such that they may be dealt with either as a criminal *183 or civil contempt. Beatty v. Wunschel, 122 N.J. Eq. 286, 289 (Ch. 1937). Whether criminal or civil, the contempt is to be prosecuted in the action in which it occurs. R.R. 8:8-2; cf. R.R. 4:87-2. Zimmerman v. Zimmerman, 12 N.J. Super. 61, 66 (App. Div. 1951).
The second question which suggests itself, and which is not raised in defendant's brief, is whether this court should now proceed to dispose of the matter on the merits rather than remand it to the municipal magistrate. We conclude that it should be remanded so that defendant may have an opportunity for a full hearing, no matter how clear and compelling the apparent circumstances of her guilt. For this court to attempt to determine, on an incomplete record, the question of defendant's guilt of contempt without any opportunity afforded her to offer such explanation or defense, if any, as she may wish or be advised to submit, whether by way of testimony or otherwise, would be to deprive her of the essentials of due process and amount to an outright negation of the applicable rule. All we have before us is evidence of the apparently contemptuous acts, but nothing by way of explanation or mitigating circumstances on behalf of defendant.
In the Zimmerman case, above, the Appellate Division construed what was formerly R.S. 2:15-3, as amended by L. 1948, c. 333  subsequently reenacted as N.J.S. 2A:10-3  which provides that every summary conviction and judgment by an inferior court for a contempt "shall be reviewable, both upon the law and the facts, by the appellate division of the superior court. The appellate division shall give such judgment as it shall deem to be lawful and just under all the circumstances of the case and shall enforce the same as it shall order." The court there said that upon a review in the Appellate Division of a summary conviction for contempt, the review was to be a trial de novo, "at least where the accused had a full opportunity to present his side of the case, and a stenographic transcript is available." 12 N.J. Super., at page 69. It further indicated that on such an appeal its function was not merely to reverse and remand *184 for a new trial, but to find the defendant guilty or not guilty, and if found guilty, to impose such punishment as the law permits and seems just. As indicated in the quoted excerpt, the court clearly implied it would be improper to proceed to a disposition of the matter on the merits where the accused did not have a full opportunity to present his side of the case at the original proceeding.
The express requirement of R.R. 8:8-1 not having been followed, with the result that we do not have a complete record before us, a remand is clearly called for. The judgment under appeal is reversed and the case remanded for a hearing before the municipal magistrate at which the defendant will be afforded a full opportunity to be heard.