## A92A1430. IN RE SMITH.
(424 SE2d 45)

McMURRAY, Presiding Judge.

The Sheriff of Camden County, William E. Smith, was found in contempt of court for failing to arrest Charles Lang. Following the imposition of punishment, a $500 fine, Smith appealed, arguing the evidence failed to demonstrate that he neglected his duty. We agree and reverse.

Charles Lang was arrested in August 1991 for failure to pay child support. After reaching an agreement with his ex-wife, Lang was released from jail. Lang failed to live up to his agreement and, on October 22, 1991, the sheriff was ordered to seize Lang "instanter" and place him in confinement. During the course of the next two months, six deputies tried to find and arrest Lang, to no avail. In the midst of the deputies' search, the superior court judge who issued the order to seize Lang, telephoned the sheriff's office and told a deputy sheriff that he wanted Lang picked up "by sundown." The sheriff's department was still unable to find Lang, even though it enlisted a local police department to help with the search. Thereafter, Lang's ex-wife brought this proceeding against the sheriff, seeking, inter alia, an attachment for contempt.

At the hearing, Lang's ex-wife introduced evidence demonstrating that Lang lived with his mother during the time in question and that he was home nearly every day between 3:30 p.m. and 7:00 a.m. Lang's ex-wife also introduced evidence showing that a special process server was able to serve Lang with a subpoena at his mother's house on December 20, 1991. The process server acknowledged that he approached the house in plainclothes and that Lang would have no reason to hide from him.

Lang testified that he was not hiding or concealing himself; but he admitted that he did not "go in the streets." Lang's ex-wife believed that Lang was probably hiding from the sheriff.

The process server testified that after he served Lang with the subpoena, Lang followed him out to his car and told him that he used to ride to work with the sheriff and that his father used to take him and the sheriff hunting when they were boys. Along these lines, evidence was introduced indicating that the sheriff refused to arrest or serve papers on people that he knew and favored.

The sheriff testified that he had no contact with this case except on one occasion. That was when a deputy told him about the October 22 arrest order. The sheriff told the deputy to do what he had to do to find and arrest Lang.

The sheriff also testified that he never refused to carry out an arrest order or serve papers on anyone. He denied that he used to ride to work with Lang or that he went hunting with Lang when they were

children. The sheriff cast doubt upon the hunting story, pointing out that Lang was younger than he was by a number of years.

The sheriff's deputies detailed the efforts they took to find Lang. They were hampered by the fact that Lang gave them a post box address when he was arrested in August and because, for a while at least, they believed he was in Florida. The deputies tried to find Lang at more than one place of employment; and they tried to find him on more than one occasion at his mother's house. But when the deputies went to Lang's mother's house, one of two things happened: either no one was home or they were told Lang did not live there. And neither Lang's ex-wife nor her attorney told the sheriff's department that Lang was living with his mother. *Held*:

OCGA § 15-13-2 (2) provides: "Any sheriff shall be liable to an action for damages or an attachment for contempt of court, at the option of the party, whenever it appears that the sheriff has injured the party by: . . . (2) Neglecting to arrest a defendant. . . ." This provision must be read in conjunction with OCGA § 15-16-10 which provides, in pertinent part: "(a) It is the duty of the sheriff: (1) To execute and return the processes and orders of the courts and of officers of competent authority, if not void, with due diligence, when delivered to him for that purpose, according to this Code . . . (8) To perform such other duties as are or may be imposed by law or which necessarily appertain to his office. (b) If any sheriff or deputy fails to comply with any provision of subsection (a) of this Code section, he shall be fined for a contempt as the clerk of the superior court is fined in similar cases."

In light of the foregoing statutes, it is clear that a sheriff can be found in contempt of court by "neglecting" to perform his duties. Stated somewhat differently, a sheriff can be fined for contempt if he fails to perform his duties with "due diligence." Did the sheriff neglect to perform his duties? Did he fail to act with due diligence? The answer to these questions lies in *Heard v. Callaway*, 51 Ga. 314 (1874).

In *Heard*, the Supreme Court of Georgia held that whether a sheriff neglected his duty "would depend on the good faith of his conduct, in view of the circumstances under which he acted, of which the court is to judge." Id. at 317. In determining whether the sheriff acted in good faith, the court is to exercise its sound discretion. Id.

Moreover, this Court is compelled, on review of an appeal of a criminal contempt conviction, to utilize the standard of whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See *In re Irvin*, 254 Ga. 251, 254 (2), 256 (328 SE2d 215); *Garland v. State*, 253 Ga. 789, 790 (1) (325 SE2d 131); *In re Crane*, 253 Ga. 667, 669 (2), 670 (324 SE2d

443).

We have no hesitation in concluding that the trial court abused its discretion in this case. After all, the sheriff, acting through his deputies, made every effort to find and arrest Lang: The deputies tried to ascertain Lang's place of residence; they searched for him at his mother's house and were told that he did not live there; they tried to find him at various places of employment. We do not know what more the deputies could have done to find Lang. The mere fact that their efforts were not successful is not evidence that they did not act in good faith or without due diligence.

*Judgment reversed. Sognier, C. J., and Cooper, J., concur.*

DECIDED OCTOBER 8, 1992 —
RECONSIDERATION DENIED OCTOBER 20, 1992 — 

*Jones, Brown, Brennan & Eastwood, Taylor W. Jones, Rebecca A. Copeland,* for appellant.
*Stein & Cauthen, James E. Stein,* for appellee.